## CRANE *vs.* BAUDOINE.

An implied promise is one which the law raises, founded upon the justice of the transaction.

Where a person avails himself of the benefit of services done for him, although without his positive authority or request, the law supplies the formal words of contract, and presumes him to have promised an adequate compensation.

The plaintiff was sent for, as a physician, to come to the house of the defendant, and attend his sick daughter.    The patient was about thirty years of age, and a married woman.    The plaintiff responded to the request, and rendered medical attendance and gave professional advice as a physician, at the house of the defendant, in his presence, and with his consent, for more than six months; giving his professional directions, in the case, to the defendant, principally, who was always present; and the latter acceding to the plaintiff's proposition that a person named should act with him as a consulting physician. The plaintiff did not know the patient to be a married woman until some time after he began attending her.    All the circumstances indicated that the employment was by the defendant; and neither by word nor deed did he intimate anything to the contrary during the numerous professional visits of the plaintiff.    *Held* that these facts established an implied employment of the plaintiff by the defendant, in the usual way of employing physicians; and that although a request of the defendant that the plaintiff should attend his daughter was not proved by the use of any express terms, it was plainly collected from the circumstances, and supplied by intendment of law.

*Held, also,* that there was an acquiescence by the defendant, during the whole time of the performance by the plaintiff of his professional services; and that his conduct was equivalent to an acknowledgment that the plaintiff had acted at his request.

APPEAL from a judgment entered upon the report of a referee, dismissing the complaint, with costs. The material facts appear in the opinion of the court.

Crane *v.* Baudoine.

*W. A. Beach,* for the appellant.

*Roger A. Pryor,* for the respondent.

*By the Court,* FANCHER, J. This action was brought to recover compensation for medical services rendered by the plaintiff as a physician, in attending and prescribing for the daughter of the defendant, while she was sick at his residence. The value of the services was admitted, and the issue litigated was whether the defendant was liable to pay therefor.

The patient was a lady thirty years of age, the wife of John Martine. She was sick in her own residence about three months, when, because of the wish of her mother, she was brought to the house of the defendant, her husband and two children coming there with her. The defendant employed Doctor Bernachy to attend his daughter, and he employed Doctor Lomas, on consultations, nearly a month before the plaintiff was called to attend her. The defendant saw a Mrs. Lowther, and referring to his daughter, said he was very much troubled about her; thought he was not satisfied with the doctor that he had, and that he wished her (Mrs. Lowther's) doctor could see her. She told him her doctor was Dr. J. J. Crane, of 31 West Thirty-first street. The defendant said he thought he would send for him, and hear what he had to say about it.

The defendant also conversed with Mr. Charles Lowther, "some little while" after his daughter had been removed to his house, and was told by Lowther that the plaintiff was "a first rate physician;" when the defendant said he had some idea of sending for Doctor Crane; that he had had several physicians and did not feel altogether satisfied, and that he thought he would go and see Doctor Crane.

Shortly afterward, in the spring of 1866, a person came into the plaintiff's office, then unknown to him, but

Crane *v.* Baudoine.

whom he afterward found to be Mr. Martine, and stated that the defendant desired him to see his daughter, at his house in Twenty-third street. The plaintiff promised to go the next day, at eleven o'clock. He went to the defendant's residence at the appointed time, and saw the patient, in the third story front room; examined the case, and received from the defendant a history of a previous trouble. The plaintiff testified that each day he saw the lady, the defendant was present. The plaintiff continued his visits, and shortly after they began, he told the defendant he would like to call in Doctor Clark, which the defendant assented to, and desired to fix the hour, so that he might be present. The plaintiff principally left directions in regard to the treatment of the paitent, with the defendant, who was always present; and he also told the defendant what he wanted to have done. The plaintiff did not know the daughter of the defendant to be Mrs. Martine, as he testifies, until some time after he began his attendance on her.

From the time Dr. Clark was called, in consultation on the 10th of May, until 9th of October, he made twenty-seven visits to the patient, consulting with the plaintiff or with his assistant, who attended for the plaintiff during his absence in Europe. The referee refused to allow the plaintiff to prove who paid Dr. Clark's bill.

The plaintiff charged the defendant for his services; and it appears that a sister-in-law of the plaintiff made out his bills. The bill for these services was made out to the defendant and sent to him. The services comprised 110 professional visits and thirty consultations with other physicians, extending from May 8th to November 21, 1866.

On the first of June, 1867, Martine, the husband of the patient, paid to the plaintiff one hundred dollars on account of the bill, and "assumed" to pay the balance, but never did.

It is established by the evidence, that the plaintiff,

Crane v. Baudoine.

when he entered upon his engagement to attend the patient, only knew her to be the daughter of the defendant; and that all the services were rendered at the residence of the defendant, by his consent, and generally in his presence. When the defendant swears that he never *employed* the plaintiff, he must be understood to mean that no express agreement was made; for the facts, as proved, show an implied employment, in the usual way in which physicians are employed. The plaintiff was sent for as a physician to come to the house of the defendant and attend his sick daughter. He responded to the request and rendered medical attendance, and gave professional advice as a physician, at the house of the defendant, in his presence, and with his consent. All the circumstances indicated that the employment was by the defendant, and neither by word nor act did he intimate anything to the contrary, during the numerous professional visits of the plaintiff.

The defendant confesses he had employed two other physicians before the plaintiff was called; and he received and accepted from the plaintiff, after his services began, a suggestion that Dr. Clark should act with him as a consulting physician. The plaintiff gave his professional directions, in the case, to the defendant principally, and the defendant permitted the attendance of the plaintiff to continue for more than six months, until the patient's death. If these circumstances do not establish an implied employment by the defendant, then it would be difficult to conceive what would do so, short of an express formal contract. An implied promise is one which the law raises, founded upon the justice of the transaction. (*Story on Cont.* § 12. *Greenl. Ev.* 102. *Guild* v. *Guild*, 15 *Pick.* 129. *Cook* v. *Husted*, 12 *John.* 188.) The law implies from the antecedent acts of persons what their obligations are to be. (*Broom on Com. Law*, 217.) In the case of an implied agreement, the law "declares that particular acts, unaccompanied or

unexplained by express stipulations, give rise to particular duties or liabilities; and it then proceeds as if the parties had precisely stipulated for their performance."

It has been long settled, that where a person avails himself of the benefit of services done for him, although without his positive authority or request, the law supplies the formal words of contract, and presumes him to have promised an adequate compensation. (*Broom's Com. Law*, 260.) Blackstone says, there is a class of implied contracts which arise from natural reason, and the just construction of law; which, though never, perhaps, actually made, yet constantly arise from the general implication and intendment of the courts of judicature, that every man hath engaged to perform what his duty or justice requires. (3 *Black. Com.* 162.)

The request of the defendant that the plaintiff should attend his daughter is not proved by any express terms; but it is plainly collected from the circumstances, and supplied by intendment of law. There was an acquiescence by the defendant during the whole time of the performance by the plaintiff of his professional services, and his conduct was equivalent to an acknowledgment that the plaintiff had acted at his request.

The finding of the referee that the defendant never employed the plaintiff to render the services, is against the current and weight of evidence, and his conclusion that the defendant was not liable to the plaintiff to pay for the services, was erroneous.

The report of the referee should be set aside; the judgment entered thereon reversed; the order of reference vacated, and a new trial ordered at the circuit, with costs to abide the event.

[FIRST DEPARTMENT, GENERAL TERM, at New York, January 6, 1873. *Ingraham* and *Fancher*, Justices.]